**\*NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JAMIL HEARNS, | Civil Action No. 16-3284 (JLL) |
| Plaintiff, |  |
| v. | OPINION |
| OFFICER DAMIAN JOHNSON, et al., |  |
| Defendants. |  |

**LINARES**, District Judge:

Currently before the Court is the complaint of Plaintiff, Jamil Hearns, raising various claims against officials at the Union County Jail, brought pursuant to 42 U.S.C. § 1983. (ECF No. 1). As Plaintiff has been granted *in forma pauperis* status (ECF No. 4), this Court is required to screen Plaintiff's complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. Pursuant to these statutes, this Court must dismiss Plaintiff's claims if they are frivolous, malicious, fail to state a claim for relief, or seek damages from a defendant who is immune. For the reasons set forth below, this Court will permit Plaintiff's excessive force and battery claims to proceed against Defendant Johnson only, will permit Plaintiff's deliberate indifference to medical needs claim to proceed against the John Doe Superior Officer and Transporting Officer Defendants only, and will dismiss without prejudice all of Plaintiff's remaining claims.

## I.  BACKGROUND

Although Plaintiff seeks to raise numerous claims in his complaint, the factual background for his claims is relatively straightforward.   On June 24, 2014, while Plaintiff was still in the care of the Union County Department of Corrections, presumably at the Union County Jail, Plaintiff's housing unit was subject to a routine search.   (ECF No. 1 at 9).   During that search, Plaintiff was strip searched, told to dress, handcuffed, and placed against a wall on the inside of his housing unit.   (*Id.*).   While handcuffed and sitting against the wall, Plaintiff made the following remark to one of the officers conducting the search, Damian Johnson: "it looks as though you are still working-out."   (*Id.*).   This remark apparently made Officer Johnson irate, and Johnson then yelled at Plaintiff.   (*Id.*).   When the other officers present attempted to calm him, Johnson yelled at them as well.   (*Id.* at 10).

Johnson then apparently wrapped his handcuffs around his knuckles and began to strike Plaintiff in the back and the side of the head.   (*Id.*).   Once Johnson began to strike Plaintiff, the other officers who were present, "including two Superior Officers then intervened on Plaintiff['s] behalf and stopped the . . . assault," which Plaintiff characterizes as "unprovoked."   (*Id.*).   Plaintiff further states that these other officers restrained Johnson and removed him from the area.   (*Id.*).   The supervisory officers then called an "emergency administrative medical code" and Plaintiff was rushed to the jail's infirmary for medical treatment.   (*Id.*).

Once in the infirmary, the jail's medical personnel determined that Plaintiff's injuries required more care than could be provided at the jail, and so arrangements were made to take Plaintiff to the local hospital.   (*Id.* at 11).   Rather than call an ambulance, however, some unspecified "Superior Officers" at the jail "waited more than 60 minutes before finally

transporting Plaintiff' to the hospital.  (*Id.*).  Upon his arrival at the hospital, Plaintiff was taken to the emergency room and treated for injuries including a fractured skull, several bruised ribs, lacerations to the head, and back and spinal injuries.  (*Id.*).  During treatment, officers apparently told the hospital staff that these injuries were incurred when Plaintiff fought with officers at the jail, a claim which Plaintiff asserts he disputed with the medical staff.  (*Id.*).  The physicians at the hospital apparently told the officers who transported Plaintiff that he should be admitted to the hospital, but the officers refused admission and returned Plaintiff to the jail's infirmary, where he was placed in an administratively segregated medical unit where he remained for several days for further treatment.  (*Id.* at 11-12).

Following the beating, Officer Johnson apparently filed several institutional charges against Plaintiff.  (*Id.* at 12).  Plaintiff was apparently acquitted of these charges following an investigation by the jail's Special Investigation Unit.  (*Id.*).  According to Plaintiff, however, Officer Johnson received less favorable results – he was apparently disciplined, terminated, and ultimately was subjected to criminal prosecution, the outcome of which is not clear from the complaint.  (*Id.* at 13-14).  Plaintiff also alleges that, following the attack and in advance of filing his complaint, he requested his medical file from the jail, but his request was denied.  (*Id.* at 26).  Plaintiff does not clearly specify, however, to whom this request was made.  (*Id.*).

## II.  DISCUSSION

### A.  Legal Standard

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil

3

actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), or

seeks damages from a state employee, *see* 28 U.S.C. § 1915A.   The PLRA directs district courts

to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which

relief may be granted, or seeks monetary relief from a defendant who is immune from such

relief.   This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. §§

1915(e)(2)(B) and 1915A because Plaintiff is a convicted state prisoner who has been granted *in

forma pauperis* status and who seeks to raise claims against state employees.

　　　According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers

'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not

do.'"   556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

(2007)).   To survive *sua sponte* screening for failure to state a claim[1], the complaint must allege

"sufficient factual matter" to show that the claim is facially plausible.   *Fowler v. UPMS

Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).   "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged."   *Fair Wind Sailing, Inc. v. Dempster*,

764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).   Moreover, while *pro se*

pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their

---

[1]　　　"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)."   *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

## B.  Plaintiff's Section 1983 Claims

In addition to several state law claims, Plaintiff seeks to make claims against defendants for alleged violations of his constitutional rights pursuant to 42 U.S.C. § 1983.  "To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or laws of the United States that was committed by a person acting under the color of state law." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000); *see also Woodyard v. Cnty. of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013) (section 1983 provides "private citizens with a means to redress violations of federal law committed by state [actors]").  "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Nicini*, 212 F.3d at 806 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998)).  Here, Plaintiff asserts the following § 1983 claims: an excessive force claim against Officer Johnson, a failure to protect claim against the other officers present during the Johnson attack, a claim for deliberate indifference to medical needs, and a claim that his constitutional rights were violated when he was denied his medical files.[2]

---

[2]  Although this Court discusses Plaintiff's constitutional claims under § 1983, Plaintiff also seeks to raise these claims under the New Jersey Civil Rights Act.  Because the New Jersey Civil Rights Act has been repeatedly been interpreted as analogous to § 1983, and has been subjected to the same limitations vis a vis personhood and personal involvement, the discussion of Plaintiff's claims below applies to both his § 1983 and NJCRA claims.  *See Ingram v. Twp. of Deptford*, 911 F. Supp. 2d 289, 297-99 (D.N.J. 2012).  Likewise although Plaintiff has separate

Before this Court can address Plaintiff's claims, however, the Court must note that the standard applicable to several of Plaintiff's claims depends on whether he was a convicted prisoner or a pre-trial detainee at the time of the assault, which occurred at the Union County Jail before Plaintiff was moved to New Jersey State Prison.   Although Plaintiff does attempt to couch some of his claims in violations of the Eighth Amendment, the Eighth Amendment applies only to convicted prisoners, whereas claims for deliberate indifference, excessive force, and failure to protect raised by pre-trial detainees arise under the Fourteenth Amendment.   *See, e.g., Bistrian v. Levi*, 696 F.3d 252, 366-67 (3d Cir. 2012).   As the protections of the Fourteenth Amendment are at least equal to if not greater than those afforded by the Eighth Amendment, this Court will review Petitioner's claims under the assumption that he was a pre-trial detainee during his time in the Union County Jail.   *Id.*

### 1.  Plaintiff's Failure to Protect Claim

Plaintiff asserts that the other officers who were present at the time of the Johnson attack failed to protect him from that attack.   As the Third Circuit explained in *Bistrian*, in order to state a claim for failure to protect, be it under the Fourteenth or Eighth Amendment, a plaintiff must plead facts which show that "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the [Defendant] was deliberately indifferent to that substantial risk to his health

---

counts in his complaint for "State Constitutional Torts" and "Federal Constitutional Torts" he does not assert any facts which would lead this Court to conclude that he is addressing claims other than the civil rights claims discussed below.   To the extent that Plaintiff wished to bring other claims, he may do so by filing an amended complaint in accord with Federal Rule of Civil Procedure 15.

and safety, and (3) the [Defendant's] deliberate indifference caused him harm." *Id.* "'Deliberate indifference' in this context is a subjective standard: 'the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.'" *Id.* One subset of failure to protect claim is for a failure to intervene. As the *Bistrian* court explained, "a corrections officer who fails to intervene when other officers are beating an inmate may be liable on a failure-to-protect claim if the officer had 'a realistic and reasonable opportunity to intervene' and 'simply refused to do so.'" *Id* at 371.

Here, Plaintiff seeks to make out a failure to protect claim on the basis of his alleged beating by Officer Johnson. As for a general failure to protect claim as to officers and supervisory defendants not present, however, Plaintiff has provided nothing other than conclusory allegations to support the conclusion that such Defendants should have known of a danger to Plaintiff's health in the person of Officer Johnson. Indeed, by Plaintiff's own admission, the attack was allegedly "unprovoked" and unforeseen. Thus, Plaintiff fails to state a general failure to protect claim as he has not pled facts which would show that officials were aware of any danger to him from Officer Johnson.

As to the officers present during the beating, including two supervisors, Plaintiff appears to be alleging a claim for failure to intervene. The problem with that argument, however, is that Plaintiff has specifically pled that those officer *did* intervene. He specifically pleads that the other officers intervened, restrained Johnson, and removed him from the area before immediately calling for medical aid. Plaintiff has pled no facts which would suggest that his attack by Officer Johnson was permitted to go on at length, or that the officers failed to intervene for any significant period of time. The facts as pled instead suggest that the officers stopped the assault as soon as they

7

were able, and thus Plaintiff has failed to state a claim for relief based on a failure to intervene as well.   Thus, Plaintiff's failure to protect claims must be dismissed without prejudice at this time.

**2.   Plaintiff's Excessive Force Claims**

Plaintiff also pleads a claim for excessive force.   While this Court finds that there is no basis for the dismissal of Plaintiff's excessive force claim as to Officer Johnson and will allow that claim to proceed at this time, Plaintiff also seeks to raise this claim against other defendants, including supervisory defendants and, apparently, the other officers who were present.[3]   The Fourteenth Amendment prohibits the use of force against a pre-trial detainee where that force amounts to punishment.[4]   *See Jackson v. Phelps*, 575 F. App'x 79, 83 (3d Cir. 2014).   While it is possible to raise such a claim against a supervisory Defendant, a "defendant in a civil rights action must have personal involvement in the alleged wrongs" and a plaintiff must therefore plead a supervisory defendant's involvement in the alleged violation through means other than vicarious liability.   *Rode*, 845 F.2d at 1207-08.   Generally, a plaintiff must therefore show each supervisor's participation in the alleged wrong by pleading either that the supervisor's

---

[3] Plaintiff pleads all of his claims as to all Defendants, including those who logically would not be liable for certain counts, such as the medical staff being pled as Defendants in Plaintiff's excessive force and failure to protect counts.   Thus, it is somewhat difficult to discern against whom some of the claims are pled, but this Court shall construe Plaintiff's claims based on the facts alleged.

[4] The Eighth Amendment instead protects convicted inmates from force which is used "maliciously and sadistically to cause harm."   *Jackson*, 575 F. App'x at 82.   Thus, in an Eighth Amendment context, whether the force used is excessive largely depends on whether it was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm."   *Fuentes v. Wagner*, 206 F.3d 335, 347-48 (3d Cir. 2000). As to Defendant Johnson, Plaintiff clearly states a claim for relief under either test.

"establishment of policies, practices or customs . . . directly caused the constitutional violation[,] personal liability based on the supervisor participating in the violation of [the p]laintiff's right, [that the supervisor] direct[ed] others to violate [the p]laintiff's rights, or [that the supervisor had actual] knowledge of and acquiesc[ed] to a subordinate's conduct." *Doe v. New Jersey Dep't of Corr.*, Civil Action No. 14-5284, 2015 WL 3448233, at \*9 (D.N.J. May 29, 2015) (quoting *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316-20 (3d Cir. 2014), *rev'd on other grounds*, 135 S. Ct. 2042 (2015)); *see also Tenon v. Dreibelbis*, 606 F. App'x 681, 688 (3d Cir. 2015) (§ 1983 Plaintiff pleading supervisory liability must establish defendant's "participation [in the alleged wrong], or actual knowledge and acquiescence, to be liable").

Where a Plaintiff's policy-based supervisory liability claim arises out of an alleged failure by a supervisor to train or correct the behavior of his subordinates, the plaintiff must establish that the supervisor's actions "amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (quoting *Bd. Of County Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)). Thus, the Defendant's alleged inaction must be severe enough to be the "functional equivalent of a decision by the [supervisor] to violate the Constitution." *Id.* at 61-62 (*Canton*, 489 U.S. at 395). Generally, establishing deliberate indifference requires that a plaintiff plead facts showing a "pattern of similar constitutional violations by untrained employees." *Id.* at 62.

Here, Plaintiff pleads no facts which would connect any Defendant, supervisory or

otherwise, to the actions of Johnson.   As to supervisory liability, Plaintiff has done no more than plead a conclusory allegation that the actions of Johnson were somehow the result of policies and practices at the Union County Jail, he provides no facts which would suggest this is the case, nor does he name or describe any actual policy which was in place.   Plaintiff has pled no pattern or practice of violence against detainees by Johnson, nor any other facts which would establish a plausible claim for supervisory liability as to his excessive force claims.   Plaintiff has thus failed to plead a supervisory claim, and has not otherwise pled the direct involvement of any of the other Defendants in the alleged assault.   Plaintiff's excessive force claims must therefore be dismissed as to all Defendants other than Defendant Johnson.

### 3.   Plaintiff's Deliberate Indifference to Medical Needs Claim

Plaintiff next asserts that Defendants were deliberately indifferent to his medical needs following the attack.   In order to establish a claim for deliberate indifference to medical needs, a plaintiff must allege "(i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."[5]   *Natale*, 318 F.3d at 582.   Deliberate indifference requires that the defendant "knows of and disregards an excessive risk to inmate health or safety." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).   A medical need is sufficiently serious where it "has been diagnosed as requiring treatment or [is a need that] is so obvious that a lay person would easily recognize the necessity of a doctor's attention."   *Monmouth Cnty. Corr. Inst.*

---

[5] As the *Natale* court noted, this same standard is used to evaluate deliberate indifference to medical needs claims for both Eighth and Fourteenth Amendment based claims, and thus applies regardless of whether Plaintiff was a pre-trial detainee or post-conviction prisoner at the time of the events about which he complains.

*Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), *cert denied*, 486 U.S. 1006 (1988).

In his complaint, Plaintiff asserts that the officers who intervened to end the Johnson attack took him to medical, where he received treatment from the medical staff of the jail. He also alleges that they concluded he needed additional care in a hospital. Jail staff then undertook to move Plaintiff to a hospital. Likewise, upon arrival at the hospital, Plaintiff states that he received further treatment in an emergency room by hospital staff. Upon his return to the jail, he was kept in a segregated medical unit and subjected to further treatment by jail staff. None of these facts suggest deliberate indifference to Plaintiff's needs. Nor does Plaintiff plead any facts, as opposed to conclusory allegations, suggesting how or to what extent the treatment he did receive from the jail's medical staff was inadequate. Thus, nothing about Plaintiff's treatment by jail medical officials while in the jail as pled by Plaintiff suggests deliberate indifference to his medical needs.

That said, there are three incidents which occurred during this course of treatment which require further consideration. First, Plaintiff alleges that he was made to wait more than an hour before being taken to the hospital, a decision he asserts was made by unnamed Superior Officers at the jail, presumably some of the John Doe Defendants (hereafter "Superior Officers"). While there may be legitimate security reasons for the delay (Plaintiff's suggestion that an ambulance should have been called may well discount the need for secure transport), if this decision were made without any consideration of the medical needs involved, one could infer that these Superior Officers acted with deliberate indifference to Plaintiff's need for hospital-level care which Plaintiff alleges had been prescribed by jail doctors. Thus, Plaintiff's deliberate indifference claim shall be permitted to proceed at this time against the John Doe Superior Officers.

The other two events Plaintiff mentions occurred at the hospital. While at the hospital,

Plaintiff asserts that the John Doe Officers who transported him ("Transporting Officers") to the hospital misrepresented the facts regarding the attack, stating that Plaintiff's injuries were the result of a fight with officers rather than an "unprovoked" attack by an officer. Plaintiff also asserts that these officers refused the request of hospital doctors to admit Plaintiff for further treatment. While this Court doubts the alleged misrepresentations would amount to deliberate indifference given the fact that Plaintiff was in the process of being treated and it is doubtful the question of whether the injuries were sustained in a fight with an officer as opposed to an assault by an officer ultimately had the ability to affect Plaintiff's treatment, the latter decision, to refuse to permit the hospital to admit Plaintiff in the face of a doctor's alleged insistence that this be done, arguably permits an inference of deliberate indifference in the absence of further facts, such as the security interests involved, the ability of the jail to provide the same care as the hospital following the emergency treatment, and the like. Thus, Plaintiff's deliberate indifference claim shall be permitted to proceed at this time against the John Doe Transporting Officers.

As to the remaining Defendants Plaintiff names, including Johnson, the John Doe jail medical staff, remaining officers, and John Does other than the above referenced superior officers or transporting officers, Plaintiff has pled no facts which would permit a reasonable inference of deliberate indifference to Plaintiff's medical needs. Nor has Plaintiff pled sufficient facts to suggest that any deliberate indifference on behalf of the Superior Officers or Transporting Officers was the result of a policy, practice, or custom of the jail in anything other than a conclusory manner. The only way in which Plaintiff attempts to connect the alleged deliberate indifference referenced above to any of the other Defendants is by alleging that all of the alleged constitutional violations at issue here were the result of some kind of ill-defined conspiracy.

12

To the extent that Plaintiff seeks to plead a conspiracy claim, however, he has failed to do so.   In order to plead a conspiracy, be it under § 1983 or otherwise, a Plaintiff must "provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action."   *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 185 (3d Cir. 2009).   As a plaintiff's pleadings must present sufficient factual allegations to raise their claims above a speculative level, "the bare allegation of an agreement is insufficient to sustain a conspiracy claim," *Brown v. Deparlos*, 492 F. App'x 211, 215 (3d Cir. 2012), and it "is insufficient to allege that 'the end result of the parties' independent conduct caused plaintiff harm or even that alleged perpetrators of the harm acted in conscious parallelism.'"   *Desposito v. New Jersey*, No. 14-1641, 2015 WL 2131073, at *14 (D.N.J. May 5, 2015) (quoting *Novellino v. N.J. Dep't of Corr. Mountanview Youth*, No. 10-4542, 2011 WL 3418201, at *15 (D.N.J. Aug. 3, 2011).

In this matter, Plaintiff pleads no facts suggesting agreement and concerted action other than his own conclusory allegation that a conspiracy was undertaken to harm him and deny him treatment.   Indeed, the facts that Plaintiff does plead suggest entirely the opposite – that Johnson's beating was a spur of the moment action by Johnson, that the other officers sought to stop it and get Plaintiff treatment, that jail medical staff tried to treat him and suggested hospitalization, and that Plaintiff was then taken to the hospital for further treatment.   Plaintiff has pled no facts to support any sort of agreement to harm him, nor anything that could truly be called concerted action to reach that goal.   As such, he has failed to plead a plausible conspiracy claim, and has ultimately failed to plead facts connecting any Defendant other than the Superior Officers and Transporting Officers to the alleged deliberate indifference.   Thus, Plaintiff's deliberate indifference claim

13

must be dismissed without prejudice at this time as to all Defendants other than the John Doe Superior Officers and Transporting Officers discussed above.

### 4. Plaintiff's medical records claim

Plaintiff's final "constitutional" claim is that his rights were violated when the jail refused to turn his medical file over to him in advance of litigation.   This Court, however, is aware of no state or federal constitutional right requiring that a state prisoner be provided with copies of his medical files upon request.   While the Court recognizes that certain statutory or administrative regulatory provisions provide inmates with a means to acquire their medical files, *see, e.g.,* N.J. Admin. Code § 10A:22-2.7(a) ("an inmate may obtain a copy of his or her medical records by submitting a written request, on Form MR-022, to the Medical Department"); *but see* § 10A:22-2.7(e) (permitting medical staff to withhold medical reports under certain circumstances), it is not clear that those sections provide a private cause of action.   It is clear, in any event, that a violation of those statutes would not qualify as a constitutional violation sufficient to support a claim raised under 42 U.S.C. § 1983 or its state analog, as Plaintiff asserts here.   Plaintiff's medical records claim will therefore be dismissed without prejudice at this time.

14

**C.   Plaintiff's State Law Claims**

**1.   Medical Malpractice and Negligence**

Plaintiff also asserts claims for various torts controlled by state law.   The first such claim he asserts is a claim for medical malpractice against all Defendants.   "Under New Jersey law, a plaintiff in a medical malpractice action must prove three elements: (1) there is an applicable standard of care, (2) a deviation from that standard occurred, and (3) the deviation was the proximate cause of the harm sustained by the plaintiff."   *Hottenstein v. City of Sea Isle City*, 977 F. Supp. 2d 353, 367 (D.N.J. 2013) (citing *Verdicchio v. Ricca*, 843 A.2d 1042, 1055-56 (N.J. 2004)).   Because medical malpractice is a subset of a negligence cause of action "refined to reflect the professional setting of a physician-patient relationship" a malpractice plaintiff must establish that the Defendant was subject to an applicable medical standard of care.   *Verdicchio*, 843 A.2d at 1055-56.

In his complaint, Plaintiff names numerous John Does who are clearly not medical professionals.   As to the medical professionals he does attempt to name, the jail's medical staff, he has provided no factual allegations regarding the standard of care applicable to their treatment of him, nor as to how they deviated or failed to meet that standard.   Indeed, other than the few facts discussed in regards to his deliberate indifference claims, Plaintiff has failed to provide any information about the nature of his treatment by the jail's medical staff, and certainly has failed to provide factual allegations which would show what the standard of care applicable to his treatment was, how medical staff failed to live up to that standard, and how their deviation caused him harm. Plaintiff's conclusory allegations of a breach of a standard of care are patently insufficient to state

15

a plausible claim for relief. *Iqbal*, 556 U.S. at 678.   As such, Plaintiff's medical malpractice claim must be dismissed without prejudice at this time.

Although Plaintiff also seeks to plead a claim of general negligence as well, that claim, too, is based on Plaintiff's bald assertion that all Defendants owed him a duty of care to provide him proper medical treatment, and that the treatment he received somehow failed to live up to that standard.   To make out his negligence claim, Plaintiff would have to plead facts which, if proved, would show that Defendants owed him a duty of care, that Defendants breached that duty, that their breach proximately caused Plaintiff's injuries, and that damages resulted.   *See Townsend v. Pierre*, 110 A.3d 52, 61 (N.J. 2015).   Even granting that at least some of the officials at the jail clearly did owe Plaintiff a duty of care to the extent that they were required to provide him adequate medical care, Plaintiff has pleaded no facts as to how they breached that duty.   Although Plaintiff provides a conclusory allegation that he was denied medical care including unspecified "necessary diagnostic procedures," Plaintiff does not identify these procedures, nor does he identify how denial of those procedures caused him harm or affected his care.   Likewise, Plaintiff provides no information which would allow the Court to conclude that these alleged "necessary diagnostic procedures" would fall within the standard of care owed him, especially in light of the fact that the non-medical Defendants clearly turned Plaintiff over to medical staff for the treatment of his injuries.   Without actual factual allegations, as opposed to unsupported conclusory allegations of wrongdoing, Plaintiff has failed to state a plausible medical negligence or malpractice claim, and those claims must be dismissed without prejudice at this time as to all Defendants.[6]

---

[6] Plaintiff's insistence on naming all Defendants in all counts of his complaint complicates this Court's ability to perceive the basis of his claims.   Although it is possible that the Transporting

16

## 2.  Battery

Plaintiff also asserts a claim for battery against all Defendants.   Generally, to make out a claim for battery in New Jersey, a plaintiff must plead that the defendant acted intending to cause a harmful or offensive contact with the person of another or to cause an imminent apprehension of that contact, and defendant's actions did result in such non-consensual contact with the plaintiff. *Leang v. Jersey City Bd. Of Educ.*, 969 A.2d 1097, 1117 (N.J. 2009).   Battery thus has an intent requirement – the defendant must have intended either to cause a harmful or offensive touching or to place the plaintiff in apprehension of such a touching.   *Id.*; *see also Kelly v. Cnty. of Monmouth*, 883 A.2d 411 (N.J. App. Div. 2005).   Clearly, Plaintiff has pled adequate facts to make out a battery claim against Defendant Jonson, and Plaintiff's battery claim will proceed against him at this time.

To the extent Plaintiff wishes to raise his battery claim against others, Plaintiff has not pled facts showing that any other Defendant, themselves, engaged in, aided or abetted, or otherwise conspired with Johnson to engage in such behavior, and thus the only other Defendants who could conceivably be subject to liability for Johnson's actions would be Johnson's employer, Union

---

Officers and Superior Officers discussed above in regards to Plaintiff's deliberate indifference claims may have owed Plaintiff a duty of care regarding his receiving adequate medical care, Plaintiff's failure to identify specific Defendants and, indeed, who the Transporting and Superior Officer Defendants actually are, prevents this Court from being able to conclude that Plaintiff has adequately alleged a duty owed him by those officers and a breach of that duty, especially in light of the fact that it is not clear that these Defendants were in any way involved in the alleged denial of unspecified diagnostic testing.   Should Plaintiff choose to reassert this or any dismissed claim, he should take more care in identifying which Defendants engaged in which acts.

County, via vicarious liability.   A public entity, however, is not liable for the acts or omissions of a public employee where those acts constitute "a crime, actual fraud, actual malice, or willful misconduct." N.J. Stat. Ann. § 59:2-10; *see also Merman v. City of Camden*, 824 F. Supp. 2d, 581, 597 (D.N.J. 2010).   As the act in question here, the alleged beating of Plaintiff, is not only an intentional, willful tort, but also allegedly was sufficient to warrant criminal charges against Johnson according to Plaintiff, those actions would constitute a crime or willful misconduct, and thus Johnson's employer cannot be held liable for those actions pursuant to the New Jersey Tort Claims Act. *Merman*, 824 F. Supp. at 597.   As Plaintiff's employer could not be held liable for his actions under the Tort Claims Act, and as Plaintiff has pled no facts connecting any other Defendant to Johnson's actions, Plaintiff's battery claims must be dismissed without prejudice as to all Defendants other than Johnson at this time.

### 3.  Fraud

Plaintiff also seeks to assert a fraud claim against Defendants, alleging that certain unspecified persons among Defendants "knowingly and willfully entered false and misleading information into Plaintiff's . . . medical file to cover-up their actions."   Plaintiff does not identify who allegedly took these actions, nor what false information they placed into his files.   Because Plaintiff is asserting a fraud claim, his claim is subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).   Pursuant to the rule, "a party must state with particularity the circumstances constituting fraud or mistake."   A plaintiff asserting fraud must therefore allege the "who, what, when, and where details of the alleged fraud" in order to meet the requirements of Rule 9(b). *District 1199P Health and Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 527

(D.N.J. 2011). "'The purpose of Rule 9(b) is to provide notice of the precise misconduct with which defendants are charged' in order to give them an opportunity to respond meaningfully to the complaint, 'and to prevent false or unsubstantiated charges.'" *Id.* (quoting *Rolo v. City of Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998)). A plaintiff therefore "must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which [it is] charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004), *abrogated in part on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). In his complaint, Plaintiff does not identify who committed the alleged fraud, or what the allegedly false information they entered into his medical file actually was, nor does he identify when or where this alleged fraud took place. Plaintiff has therefore clearly failed to meet the pleading requirements of Rule 9(b), and his fraud claim must therefore be dismissed without prejudice as to all Defendants.

### 4.  Intentional Infliction of Emotional Distress

Plaintiff also seeks to bring a claim for intentional infliction of emotional distress. To make out a claim for intentional infliction of emotional distress under New Jersey law, a plaintiff must allege that the defendant intended to cause emotional distress, engaged in conduct that was extreme and outrageous, that this conduct proximately caused emotional distress to Plaintiff, and that the emotional distress which resulted was severe. *Witherspoon v. Rent-A-Center, Inc.*, 173 F. Supp. 2d 239, 242 (D.N.J. 2001); *see also Smart v. Santiago*, Civil Action No. 15-1065, 2015 WL 2226207, at *6 (D.N.J. May 12, 2015); *Taylor v. Metzger*, 706 A.2d 685, 694-97 (N.J. 1998).

19

Conduct is sufficiently outrageous to meet this requirement where it is "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Taylor*, 706 A.2d at 694 (internal quotations omitted).   As to intent, the plaintiff must plead both that the defendant acted intentionally or recklessly "both to do the act and to produce emotional distress." *Id.* at 696. Finally, emotional distress is sufficiently severe to state a claim where the alleged distress is "so severe that no reasonable person could be expected to endure it." *Id.* (internal quotations omitted). Thus, a plaintiff must generally plead that he has suffered "severe and disabling emotional or mental condition[s] which may be generally recognized and diagnosed." *Id.*   Complaints which allege "nothing more than aggravation, embarrassment, an unspecified number of headaches, and loss of sleep" are therefore insufficient to support a claim of intentional infliction of emotional distress. *Id.*

The only Defendant about which Plaintiff complains who engaged in anything approaching outrageous behavior would be Defendant Johnson in attacking Plaintiff.   Even assuming that the attack itself was the outrageous conduct about which Plaintiff complains, a point which is in no way clear from the conclusory pleadings as to emotional distress Plaintiff provides, and assuming that Johnson intended to cause Plaintiff emotional distress, Plaintiff's complaint fails to state a claim for relief because Plaintiff has failed to adequately plead that he suffered a sufficiently severe form of mental distress as a result.   Plaintiff pleads no information about what emotional distress he allegedly suffered, and certainly has not plead facts showing that he suffered sufficiently severe emotional harm as a result of Johnson's conduct. *Taylor*, 706 A.2d at 696.   As such, Plaintiff has failed to plead a claim for intentional infliction of emotional distress as to Johnson, and

20

certainly has failed to plead such a claim as to the remaining Defendants, for whom he has failed to plead any outrageous conduct, let alone sufficiently severe emotional harm.   Plaintiff's intentional infliction of emotional distress claim will therefore be dismissed without prejudice as to all Defendants at this time.

**5.  Failure to Report Conduct**

Plaintiff's final claim is that Defendants failed to properly report the harm he suffered from the Johnson attack and the alleged improper treatment after that attack, and that this failure to report conduct violates the Constitution and statutes of the State of New Jersey.   Plaintiff does not specifically identify the statute or constitutional section which he asserts has been violated.[7]   In general, however, he asserts that Defendants failed to report the allegedly illegal activity which occurred here.   Even assuming such a claim would stand, the facts Plaintiff has pled show that the only illegal, as opposed to tortious, conduct which occurred which Plaintiff has alleged, his beating by Johnson, was by Plaintiff's own admission reported not only to prison officials, who terminated Johnson, but also to state prosecutors who have apparently charged Johnson with a crime.   Thus, even if Plaintiff were correct that there was a private cause of action for failure to report illegal

---

[7] Plaintiff inserts the following quote without identifying its source: ". . . any worker . . . peace officer or law enforcement official or staff members of institutions . . . shall immediately notify the person in charge of the institution or agency of any violation of the laws of the State of New Jersey" as being an example of the basis for his claim.   (ECF No. 1 at 53).   This Court was unable to locate any statutory, administrative code, or constitutional provision bearing this particular language in New Jersey.   To the extent Plaintiff wishes to reassert this claim in any amended complaint, he should identify the source of the right he seeks to raise.

activity in New Jersey, Defendants, under the facts pled by Plaintiff, have met that duty and Plaintiff's claim must therefore be dismissed without prejudice at this time.

**III. CONCLUSION**

    For the reasons stated above, this Court will permit Plaintiff's excessive force and battery claims to proceed against Defendant Johnson only, will permit Plaintiff's deliberate indifference to medical needs claim to proceed against the John Doe Superior Officer and Transporting Officer Defendants only, and will dismiss without prejudice all of Plaintiff's remaining claims.   An Appropriate order follows.

Hon. Jose L. Linares,
United States District Judge

22